UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | Chapter 7 |
| | : | |
| GEORGE LINTON SHEPPARD, | : | |
| | : | Bankruptcy No. 15-17697-AMC |
| DEBTOR | : | |
| _____ | : | |
| | : | |
| GEORGE LINTON SHEPPARD, | : | |
| | : | |
| PLAINTIFF | : | |
| | : | Adv. Proc. No. 16-355-AMC |
| V. | : | |
| | : | |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GSR MORTGAGE LOAN TRUST 2005-AR4; US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR [OR ON BEHALF OF] GSR MORTGAGE LOAN TRUST 2005-AR4; WELLS FARGO BANK, N.A.; PHELAN HALLINAN DIAMOND & JONES, LLP; STEVENS & LEE, P.C.; ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE THERETO; DOES 1–10; AND ROE CORPORATIONS 1–10, INCLUSIVE, | : | |
| | : | |
| DEFENDANTS. | : | |
| _____ | : | |

Ashely M. Chan, United States Bankruptcy Judge

OPINION

I.     FACTS AND PROCEDURAL HISTORY

On April 25, 2005, the Debtor and his wife, Judith A. Sheppard ("Mrs. Sheppard" and,

- 1 -

collectively with the Debtor, the "Sheppards") executed a promissory note ("Note") in the amount of $787,500 in favor of Wells Fargo Bank, N.A. ("Wells Fargo"), which was secured by a mortgage ("Mortgage") on real property located at 2256 Washington Lane, Huntington Valley, Pennsylvania ("Property"). Compl. ¶ 44, ECF No. 1; U.S. Bank Mot. Ex. A, at 42b–57b, 63b–66b, ECF No. 23. Although Wells Fargo executed a blank assignment of the Mortgage ("2005 Assignment") in 2005, the 2005 Assignment was never completed or recorded. Compl. Ex. A.

On July 1, 2009, the Sheppards defaulted on their obligations under the Note and Mortgage by failing to make the payments due under the Note. U.S. Bank Mot. 4. On June 10, 2010, Wells Fargo executed and recorded an assignment of the Mortgage ("2010 Assignment"), in favor of US Bank National Association, as Trustee on Behalf of GSR Mortgage Loan Trust 2005-AR4 ("US Bank"). Compl. Ex. B.

### A.    2010 Foreclosure Action

On June 18, 2010, US Bank filed a mortgage foreclosure complaint against the Sheppards ("2010 Foreclosure Action") in the Court of Common Pleas for Montgomery County ("CCP"). U.S. Bank Mot. Ex. B. US Bank was represented by Phelan Hallinan & Schmieg, LLP ("Phelan Hallinan") in the 2010 Foreclosure Action. Compl. ¶ 45. On November 11, 2011, US Bank filed a praecipe to withdraw the complaint. *Id.* ¶ 49.

### B.    2012 Foreclosure Action

On February 29, 2012, US Bank filed another mortgage foreclosure complaint against the Sheppards ("2012 Foreclosure Action") in the CCP. U.S. Bank Mot. 5. US Bank was also represented by Phelan Hallinan in the 2012 Foreclosure Action.[1] *Id.*

---

[1] Although Phelan Hallinan was known as Phelan Hallinan & Schmieg, LLP, during the 2010 Foreclosure Action, it was known as Phelan Hallinan Diamond & Jones LLC, i.e., its name in this proceeding and its present name, during the 2012 Foreclosure Action. U.S. Bank Mot. 5.

On March 14, 2012, the Sheppards transferred ownership of the Property to themselves and their daughter, Wendy Lynne Sheppard ("Ms. Sheppard"). U.S. Bank Mot. Ex. A, at 71b–76b. On October 5, 2012, the Sheppards transmitted a Qualified Written Request ("QWR Letter") to Wells Fargo inquiring about the ownership of the Mortgage. Compl. Ex. D. On October 11, 2012, Wells Fargo responded to the Sheppards' QWR Letter and indicated that the Mortgage was owned by the GSR Mortgage Loan Trust 2005-AR4, "which is a mortgage-backed securitization trust ('Trust') for which U.S. Bank National Association acts as Trustee." *Id.*

On September 18, 2012, Wells Fargo executed and recorded another assignment of the Mortgage ("2012 Assignment") to US Bank. Compl. Ex. C. On January 8, 2013, U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2005-AR4 ("U.S. Bank") filed an amended mortgage foreclosure complaint ("2013 Amended Complaint") in the 2012 Foreclosure Action which added Ms. Sheppard as a defendant. U.S. Bank Mot. Ex. A, at 127b–30b.

On June 10, 2013, the Sheppards filed an answer to the 2013 Amended Complaint and a new matter, wherein it objected to U.S. Bank's standing to enforce the Note and Mortgage. U.S. Bank Mot. Ex. A, at 178b–95b. The Sheppards argued, *inter alia*, that the 2010 Assignment was invalid. *Id.* On July 9, 2013, U.S. Bank filed a response thereto wherein it included and relied upon the 2012 Assignment for the first time. U.S. Bank Mot. Ex. A, at 320b–35b, 366b–67b.

On July 8, 2014, U.S. Bank filed a motion for summary judgment ("Motion for Summary Judgment") in the 2012 Foreclosure Action. U.S. Bank Mot. 7. On August 18, 2014, the Sheppards filed an objection to the Motion for Summary Judgment and a supporting brief ("Objection"). U.S. Bank Mot. Ex. A, at 370b–431b. Therein, the Sheppards again objected to U.S. Bank's standing to enforce the Note and Mortgage because, *inter alia*, the 2010 Assignment

*and* 2012 Assignment were invalid. *Id.* The Sheppards also argued that Wells Fargo was the real party in interest in the 2012 Foreclosure Action, not U.S. Bank. *Id.* On September 11, 2014, the CCP entered an order granting summary judgment ("SJ Order") in favor of U.S. Bank in the amount of $1,153,370.32, plus interest. U.S. Bank Mot. Ex. D.

### C.   Superior Court Appeal

On October 7, 2014, the Sheppards filed a notice of appeal of the SJ Order with the Pennsylvania Superior Court ("Superior Court"). U.S. Bank Mot. Ex. F, at 2. On April 10, 2015, the Sheppards filed an appellate brief. U.S. Bank Mot. Ex. G. On July 13, 2015, U.S. Bank filed its appellate brief and was represented by Stevens & Lee, P.C. ("Stevens & Lee"). U.S. Bank Mot. Ex. H. On July 28, 2015, the Sheppards filed another brief in reply thereto. U.S. Bank Mot. Ex. I.

Meanwhile, on October 27, 2015, the Debtor filed a voluntary Chapter 7 bankruptcy petition and thereby commenced the underlying bankruptcy case. On November 25, 2015, the Debtor filed his bankruptcy schedules, but failed to list any claims against the defendants in this adversary proceeding, listed below, on Schedule B. U.S. Bank Mot. Ex. Q, at 5. On December 18, 2015, Gary F. Seitz, the Chapter 7 trustee ("Trustee"), filed a Report of No Distribution based upon his finding that there was "no property available for distribution from the estate over and above that exempted by law." U.S. Bank Mot. Ex. P, at 5. Although the Debtor later filed an amended Schedule B, he still failed to include any claims against the Defendants. U.S. Bank Mot. Ex. R, at 2.

Subsequently, on December 22, 2015, the Superior Court filed an opinion affirming the SJ Order. U.S. Bank Mot. Ex. J. On January 5, 2016, the Sheppards filed an application for re-argument *en banc* with the Superior Court. U.S. Bank Mot. Ex. F, at 5. On March 4, 2016, the Superior Court entered an order denying the Sheppards' application for re-argument *en banc*. *Id.*

D.   **Supreme Court Appeal**

On March 28, 2016, the Sheppards filed a petition for the allowance of appeal with the Pennsylvania Supreme Court ("Supreme Court"). U.S. Bank Mot. Ex. K, at 1. On April 14, 2016, U.S. Bank filed an answer to the Sheppards' petition and was again represented by Stevens & Lee. U.S. Bank Mot. Ex. K, at 3.

On June 22, 2016, U.S. Bank filed a motion for relief from the automatic stay under § 362 ("Relief Motion") in order to foreclose on the Property and, according to the Debtor, included a copy of the 2005 Assignment when it served the Relief Motion on him. Compl. ¶¶ 62–63. Prior to the filing of the Relief Motion, the Debtor allegedly was unaware of the existence of the 2005 Assignment.[2] *Id.* ¶ 63. On July 29, 2016, the Sheppards filed an application to amend their petition for the allowance of appeal with the Supreme Court in order to include the 2005 Assignment as further evidence of U.S. Bank's lack of standing. U.S. Bank Mot. Ex. L, at 2–4.

On August 30, 2016, the Supreme Court entered an order denying the Sheppards' petition for an allowance of appeal and application to amend the same. U.S. Bank Mot. Ex. N. Finally, on September 13, 2016, the Sheppards filed an application for reconsideration and, on October 13, 2016, the Supreme Court entered an order denying the application. U.S. Bank Mot. Ex. K, at 4.

E.   **The Debtor's Adversary Proceeding**

On October 11, 2016, the Debtor filed an adversary complaint ("Complaint") against, *inter alia*, Wells Fargo, US Bank, U.S. Bank, Phelan Hallinan, and Stevens & Lee (collectively, the "Defendants"). The Complaint sets forth eight causes of action for fraud on the concealment;

---

[2] The 2005 Assignment was not attached as an exhibit to the Relief Motion filed in the Debtor's underlying bankruptcy proceeding. U.S. Bank Mot. 9–10.

fraudulent misrepresentations and/or fraud on the court; intentional infliction of emotional distress; and slander of title. Compl. ¶¶ 92–165. The Debtor's claims all arise out of the Defendants' conduct in connection with the securitization and assignments of the Mortgage and the foreclosure complaints. *Id.* He alleges extensive damages largely based upon injuries to his interest in the Property. *Id.*

On December 16, 2016, U.S. Bank and Stevens & Lee jointly filed a motion to dismiss the Complaint ("Dismissal Motion") arguing, *inter alia*, that the Debtor's claims are barred by the applicable statutes of limitations and by collateral estoppel. *See generally* U.S. Bank Mot. (setting forth such arguments). On December 21, 2016, Phelan Hallinan also filed a motion to dismiss the Complaint ("Second Dismissal Motion" and, collectively with the Dismissal Motions, the "Dismissal Motions") and incorporated the arguments set forth in the Dismissal Motion. Phelan Hallinan Mot. 3–5, ECF No. 26. Subsequently, the Debtor filed a response in opposition to the Dismissal Motions, and U.S. Bank and Phelan Hallinan filed a reply brief thereto.

On March 15, 2017, the Court held a hearing on the Dismissal Motions and the issues presented therein are now ripe to be decided. For the reasons explained below, the Court will grant the Dismissal Motions with prejudice.

## II.  DISCUSSION

### A.  Pleading Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] *Ashcroft v. Iqbal*, 556

---

[3] Federal Rule of Civil Procedure 12(b)(6) is applicable in adversary proceedings by virtue of Federal Rule of Bankruptcy Procedure 7012(b).

- 6 -

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint's nonconclusory, factual allegations support "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 556). Legal conclusions and "threadbare recitals of the elements of a cause of action . . . do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Although this standard is not a "probability requirement," there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 556).

### B.    The Trustee's Exclusive Standing

In its supporting brief, Phelan Hallinan challenges the Debtor's standing to raise the issues in the Complaint and argues that the Trustee is the proper plaintiff to pursue such claims.[4] Because standing is a "threshold jurisdictional question," the Court will first inquire into whether the Debtor has standing to pursue the claims set forth in the Complaint.[5]

Pursuant to § 541, "all legal or equitable interests of the debtor in property" belongs to the estate upon the commencement of a Chapter 7 bankruptcy case. 11 U.S.C. § 541(a)(1). "Section 541 must be read broadly in determining what constitutes property of the bankruptcy estate." *Anderson v. Acme Markets, Inc.*, 287 B.R. 624, 628 (E.D. Pa. 2002) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983)). Thus, property of the estate includes causes of action that existed as of the petition date and that "the debtor could have asserted on his own behalf under state law." *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (quoting *Bd. of Trs.*

---

[4] U.S. Bank did argue that the Debtor lacks standing to "challenge the validity of any of the assignments of the Mortgage because he cannot establish that he will suffer any injury . . . and [he] is not a party [to] any of the assignments of the Mortgage." U.S. Bank Mot. 31. U.S. Bank disputes the Debtor's standing for different reasons than those the Court discusses in this section, however.

[5] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *In re Gronczewski*, 444 B.R. 526, 532 n.4 (Bankr. E.D. Pa. 2011) (quoting *In re Total Containment, Inc.*, Bankr. No. 04-13144bf, Adv. No. 05-0145, 2008 WL 682455, at *9 n.11 (Bankr. E.D. Pa. Mar. 5, 2008)).

*of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n.5 (3d Cir. 2002)).

Moreover, "upon the filing of a Chapter 7 petition, an interim Trustee is appointed to administer, *inter alia*, the property of the estate," and thereafter is the "sole representative" of the estate. *Anderson*, 287 B.R. at 628 (citing 11 U.S.C. §§ 323(a), 701). The Trustee therefore has the "exclusive right to prosecute causes of action that are property of the bankruptcy estate," and Chapter 7 debtors are deprived of such right. *Id.* (citing 11 U.S.C. § 323(b)). The Trustee has exclusive standing to prosecute such causes of action because they "inure[] to the benefit of all creditors." *Emoral*, 740 F.3d at 879.

In this case, each of the Debtors' claims existed before the petition date.[6] Therefore, the claims are property of the estate and the Trustee has exclusive standing to prosecute the same, even though the Debtor failed to list any of the claims on his bankruptcy schedules. As a result, the Debtor may not maintain the causes of action set forth in the Complaint to the detriment of the Trustee and his creditors, and the Complaint must be dismissed. *Cf. Macauley v. Estate of Nicholas*, 7 F. Supp. 3d 468, 478–79 (E.D. Pa. 2014) (dismissing the debtor-plaintiff's claims, which she did not list in her bankruptcy schedules, because they belonged to her bankruptcy estate and she "should not be able to benefit at the expense of the real party in interest to this action, the bankruptcy trustee").

C.     **Statutes of Limitations**

Although the Complaint will be dismissed based upon the Debtor's lack of standing, the

---

[6] As stated above, the Debtor's claims all arise out of the Defendants' alleged conduct in connection with the securitization and assignments of the Mortgage and the foreclosure complaints, therefore there is no colorable argument to be made that such claims did not exist before the petition date. *See* 11 U.S.C. § 101(5)(A) (defining a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"); *In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010) (stating that Congress intended the term "claim" to have the "broadest possible definition," and that "a 'claim' can exist under the Code before a right to payment exists under state law").

Court notes that, even if the Debtor had standing to pursue the claims in the Complaint, the Court would still be compelled to dismiss the Complaint based upon several of the arguments set forth in the Dismissal Motions. The Court will first address the Defendants' argument that the Debtor's claims are barred by the applicable statutes of limitations.

Statutes of limitations begin to run when "the right to institute and maintain a suit arises," which ordinarily is the moment in which "the injury is inflicted." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983); *Ayers v. Morgan*, 154 A.2d 788, 791 (Pa. 1959)). "Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute." *Id.* (citing *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964)). A party is barred from prosecuting a cause of action after the statute of limitations expires. *Id.* (citing *Nesbitt*, 204 A.2d at 475).

However, the "discovery rule" and the "doctrine of fraudulent concealment" are exceptions that toll a statute of limitations. *Id.* at 858. Pursuant to the former, the statute of limitations is tolled "until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct." *Id.* at 859 (citing *Pocono Int'l*, 468 A.2d at 471). Pursuant to the latter, "the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Id.* at 860 (citing *Deemer v. Weaver*, 187 A. 215, 215 (Pa. 1936)). However, like the discovery rule, the doctrine of fraudulent concealment only tolls the statute of limitations until "the injured party knows or reasonably should know of his injury and its cause." *Id.* at 861.

The "continuing violations doctrine" is another exception that tolls a statute of limitations. *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citing *West v. Phila. Elec.*

*Co.*, 45 F.3d 744, 754 (3d Cir. 1995)). Pursuant to the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.* (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)).

Although the statute of limitations is an affirmative defense that is not ordinarily decided on a motion to dismiss, a limitations defense may be raised under Rule 12(b)(6) if it is "apparent on the face of the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)). With the foregoing rules in mind, the Court will now examine whether the Debtor's claims are barred by the applicable statutes of limitations.

*Count I*

Count I of the Complaint sets forth a claim for fraud in the concealment based upon the securitization of the Mortgage. Compl. ¶ 92–100. Essentially, the Debtor argues that the Defendants concealed the fact that the Mortgage was securitized, and that "[c]hanging the character of the loan in this way had a materially negative effect on [the Debtor]." *Id.* ¶ 93. The Defendants argue that the statute of limitations for this claim began to run on October 11, 2012, when Wells Fargo disclosed, in response to the Debtor's QWR Letter, that the Mortgage was owned by the "GSR Mortgage Loan Trust 2005-AR4, Mortgage Pass-Through Certificates, Series 2005-AR4, *which is a mortgage-backed securitization trust*." U.S. Bank Mot. 22 (emphasis added).

In response, the Debtor argues that the statute of limitations is *still* tolled pursuant to the doctrine of fraudulent concealment because the Defendants "continue to conceal the fraud to this day." Debtor's Resp. 19, ECF No. 32. However, the Debtor's argument fails because the doctrine of fraudulent concealment ceases to toll the statute of limitations when, as is plainly the case

- 10 -

here, the plaintiff knows or reasonably should know of his injury and its cause, as explained above.[7]

The Court agrees with the Defendants that the statute of limitations began to run when Wells Fargo responded to the Debtor's QWR Letter. As a result, it is apparent on the face of the Complaint that the two-year statute of limitations applicable to causes of action for fraud expired before the Debtor filed the Complaint on October 11, 2016, and that the Debtor's claim is time-barred. *See* 42 Pa. Cons. Stat. § 5524(7) (establishing that causes of action for fraud are subject to a two-year statute of limitations).

*Counts II–VI*

Counts II–VI of the Complaint set forth claims for fraudulent misrepresentations and/or fraud on the court. Compl. ¶¶ 101–46. Essentially, the Debtor argues that (II) the 2012 Foreclosure Action was fraudulently filed in the name of U.S. Bank because Wells Fargo was the real party in interest therein as a result of the invalid assignments of the Mortgage, *id.* ¶¶ 101–09; (III) the 2013 Amended Complaint "artfully pulled a 'bait and switch' by changing the captioned plaintiff from *US Bank* to *U.S. Bank*," even though the former was the spelling of U.S. Bank's name on the 2010 Assignment and the 2012 Assignment, *id.* ¶ 110–18 (emphasis added); (IV) the 2010 Assignment was invalid, *id.* ¶¶ 119–28; (V) the 2012 Assignment was invalid, *id.* ¶¶ 129–36; and (VI) the 2005 Assignment was invalid, *id.* ¶¶ 137–46.

The Defendants argue that the statute of limitations for these claims began to run when the Debtor filed and served his Objection to U.S. Bank's Motion for Summary Judgment on August 18, 2014. U.S. Bank Mot. 41. The Debtor makes no response.

---

[7] The Debtor also argues that federal courts are not bound by state statutes of limitations. Debtor's Resp. 19 (citing *Holmberg v. Ambrecht*, 327 U.S. 392 (1946)). However, the case upon which the Debtor relies is distinguishable because it concerned a cause of action arising under federal law, *Holmberg*, 327 U.S. at 584, whereas the Complaint set forth causes of action arising under state law, Compl. ¶¶ 92–165.

The Court agrees with the Defendants, except with respect to Count VI, because the Debtor was in receipt of the foregoing allegedly fraudulent documents and challenged U.S. Bank's status as the real party in interest and assignee when he filed the Objection, and therefore plainly knew of the alleged injuries and their causes at such time.[8] As a result, except with respect to Count VI, it is apparent on the face of the Complaint that the two-year statute of limitations applicable to causes of action for fraud expired before the Debtor filed the Complaint, and that the Debtor's claims are time-barred.

*Count VII*

Count VII of the Complaint is a claim for intentional infliction of emotional distress. Compl. ¶¶ 147–56. The Debtor argues that the Defendants' conduct, "fraudulently attempting to foreclose or claiming the right to foreclose on a property in which they have no right, title or interest[, ]is so outrageous and extreme that it exceeds all bounds which is usually tolerated in civilized community." *Id.* ¶ 152. The Debtor alleges that he suffered "lack of sleep, anxiety and depression, problems with his marriage, and other relationships, both business and personal," as a result of such conduct. *Id.* ¶ 155.

The statute of limitations applicable to a cause of action for intentional tortious conduct is two years. 42 Pa. Cons. Stat. § 5524(7). The Defendants argue that the statute of limitations for the Debtor's claim for intentional infliction of emotional distress, like the statute of limitations for his claims for fraudulent misrepresentations and/or fraud on the court, began to run when the Debtor filed and served his Objection to U.S. Bank's Motion for Summary Judgment. U.S. Bank Mot. 41. The Debtor again makes no response.[9]

---

[8] The Court must conclude that the Debtor was not in receipt of the 2005 Assignment by August 18, 2014, because he alleges that the Defendants concealed the assignment until June 22, 2016. Compl. ¶ 143.

[9] It is unclear whether the Debtor argues that the fraudulent concealment or continuing violation doctrines tolled the statute of limitations because the Defendants allegedly concealed the 2005 Assignment. *See* Debtor's

The Court cannot conclude that the statute of limitations began to run on August 18, 2014. The Court does conclude, however, that the statute of limitations began to run when summary judgment was entered on September 9, 2014, because by such time the allegedly fraudulent foreclosure action was successful. As a result, it is apparent on the face of the Complaint that the two-year statute of limitations applicable to intentional torts expired before the Debtor filed the Complaint, and that the Debtor's claim is time-barred.

*Count VIII*

Finally, Count VIII of the Complaint is a claim for slander of title based upon the assignments of the Mortgage and the foreclosure complaints. Compl. ¶¶ 157–65. Slander of title "is the false and malicious representation of the title or quality of another's interest in goods or property." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (quoting *Triester v. 191 Tenants Ass'n*, 415 A.2d 698, 701 (Pa. Super. Ct. 1979)).

The statute of limitations applicable to a claim for slander of title runs one year from the date of the slanderous publication. 42 Pa. Cons. Stat. § 5523(1). The Defendants again argue that the statute of limitations began to run when the Debtor filed and served his Objection to U.S. Bank's Motion for Summary Judgment, because by such time the allegedly slanderous publications were published and the Debtor was in receipt of the same. U.S. Bank Mot. 35–36, 41. The Debtor's response that the statute of limitations was tolled because the Defendants

---

Resp. 22, 26 (discussing the assignment solely in the context of the doctrine of collateral estoppel or the *Rooker-Feldman* doctrine). However, the Debtor alleged that he suffered emotional distress as a result of the allegedly fraudulent 2012 Foreclosure Action. Compl. ¶¶ 147–56. Therefore, accepting as true the nonconclusory, factual allegations of the Complaint, and making all reasonable inferences in favor of the Debtor, he did not discover or suffer unique injuries when the assignment was revealed. As a result, to the extent that the Debtor argues that the statute of limitations was tolled pursuant to the fraudulent concealment and continuing violation doctrines, the Debtor's argument fails.

allegedly concealed the 2005 Assignment is inapposite.[10] As a result, it is apparent on the face of the Complaint that the one-year statute of limitations applicable to claims for slander of title expired before the Debtor filed the Complaint, and that the Debtor's claim is time-barred.

### D.   Collateral Estoppel

The Defendants also argue that the issue of U.S. Bank's standing to enforce the Note and Mortgage was decided in the 2012 Foreclosure Action, therefore Counts II–VIII of the Complaint are barred by collateral estoppel, as well. U.S. Bank Mot. 27–30; U.S. Bank Reply 8–10; *see also* Phelan Hallinan Mot. 3–5 (incorporating U.S. Bank's arguments). Under Pennsylvania state law,[11] collateral estoppel precludes the relitigation of an issue determined in a prior action if the following conditions are satisfied:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005) (citing *Office of Disciplinary Counsel v. Duffield*, 644 A.2d 1186, 1189 (Pa. 1994)). If the foregoing conditions are satisfied, the prior determination of the issue is conclusive in a subsequent action, "whether

---

[10] The Debtor argues that the fraudulent concealment and continuing violations doctrines tolled the statute of limitations for his claim for slander of title until June 22, 2016, because the Defendants allegedly concealed the 2005 Assignment until such time. Debtor's Resp. 24–26. The Debtor must allege publication, however, to state a claim for slander of title. *See Pro Golf*, 809 A.2d at 246 (stating that the elements of a claim for slander of title include, *inter alia*, "the *publisher* either intends the *publication* to cause pecuniary loss or should result in pecuniary loss") (emphasis added). The Defendants therefore correctly argue that the Debtor cannot state a claim for slander of title based upon the *unrecorded* 2005 Assignment because he does not allege that the assignment was published; rather, he alleges the opposite, i.e., that it was concealed. U.S. Bank Mot. 35.

[11] "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). Therefore, "as the prior forum is the Pennsylvania Court of Common Pleas for [Montgomery] County, Pennsylvania preclusion law applies." *Estate of Tyler* ex rel. *Floyd v. Grossman*, 108 F. Supp. 3d 279, 289 (E.D. Pa. June 11, 2015) (citing *Heck v. Humphrey*, 512 U.S. 477, 480 n.2 (1994)).

on the same or different claim." *Pa. State Univ. v. Cty. of Centre*, 615 A.2d 303, 306 (Pa. 1992) (quoting Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982)).

As a preliminary matter, the Court notes that there are no colorable arguments that the 2012 Foreclosure Action does not constitute a final adjudication on the merits; that the Debtor was not a party in those proceedings; that the Debtor was not given a full and fair opportunity to litigate the issues in those proceedings; and that the issue of U.S. Bank's standing was not essential to the entry of summary judgment. The Court therefore concludes that the second, third, fourth, and fifth conditions for the application of collateral estoppel are satisfied.

However, the Debtor argues that the first condition is not satisfied because the issues presented by his claims for fraud, intentional infliction of emotional distress, and slander of title set forth in the Complaint are distinct from the issues decided in the 2012 Foreclosure Action. Debtor's Resp. 22–23. Several factors affect whether there is an identity of issues between cases, set forth in the Restatement (Second) of Judgments § 27:

> [1] Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? [2] Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? [3] Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? [4] How closely related are the claims involved in the two proceedings?

*In re Nat'l Medical Imaging, LLC*, 439 B.R. 837, 848 (Bankr. E.D. Pa. 2009) (quoting Restatement (Second) of Judgments § 27 cmt. c); *see also Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (stating that an identity of issues "is established by a showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as

measured by those rules").[12]

As explained above, Counts II–VI are for fraudulent misrepresentations and/or fraud on the court based upon the assignments of the Mortgage and the foreclosure complaints, Compl. ¶¶ 101–46; Count VII is for intentional infliction of emotional distress for "fraudulently attempting to foreclose or claiming the right to foreclose," *id.* ¶¶ 147–56; and Count VIII is for slander of title based upon the assignments of the Mortgage and foreclosure complaints, *id.* ¶¶ 157–65.

The common thread of the foregoing claims is that, to state claims upon which relief may be granted, the Debtor must prove that U.S. Bank lacked standing in the 2012 Foreclosure Action, even though the ultimate issue embraced by each claim is distinct therefrom.[13] Counts II–VIII of the Complaint therefore will plainly require the presentation of the same evidence and argument, and the application of the same law, as was presented and applied previously. As a result, there is an identity of issues between this and the prior case and each of the five conditions for the application of collateral estoppel are satisfied.

Notwithstanding the foregoing, the Debtor broadly argues that the issue of U.S. Bank's standing should be relitigated in light of the 2005 Assignment, which was not previously in evidence. Debtor's Resp. 22–23. "[I]f the party against whom preclusion is sought did in fact litigate an issue of ultimate fact [i.e., the application of law to fact] and suffered an adverse

---

[12] The Pennsylvania Supreme Court has "adopted the Restatement (Second) of Judgments § 27 . . . definition of issue preclusion." *Pa. State Univ.*, 615 A.2d at 306.

[13] As partially explained above, with respect to the Debtor's claims for (1) fraudulent misrepresentations and/or fraud on the court, the Debtor must prove he was injured, *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 446 (Pa. 1992), or that the court was deceived, *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005); (2) intentional infliction of emotional distress, the Debtor must prove that the Defendants engaged in "extreme and outrageous conduct intentionally or recklessly," *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998); and (3) slander of title, the Debtor must prove that the Defendants made a "false and malicious representation" of the Debtor's title, *Pro Golf Mfg.*, 809 A.2d at 246, which are impossible if U.S. Bank was entitled to enforce the Note and Mortgage.

determination," however, "new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact." Restatement (Second) of Judgments § 27 cmt. c.[14] The Debtor therefore will not be permitted to relitigate in this case the issue of U.S. Bank's standing based solely upon the 2015 Assignment.

The Debtor finally argues that collateral estoppel is an affirmative defense and should not be decided on a motion to dismiss. Debtor's Resp. 22–23. It is apparent on the face of the Complaint, however, that collateral estoppel precludes the Debtor's claims. The defense therefore may be decided upon a motion to dismiss and Counts II–VIII of the Complaint are precluded by collateral estoppel as a result. *M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010).

### III. CONCLUSION

For the foregoing reasons, the Dismissal Motions are hereby granted and the Complaint is dismissed with prejudice. An appropriate order follows.

Date: April 4, 2017

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

---

[14] *See also Com. v. Hude*, 425 A.2d 313, 323 (Pa. 1980) (stating that collateral estoppel precludes the relitigation of an issue in a subsequent proceeding "whether the same or different evidence is to be introduced"); *Com., Dep't of Transp. v. Martinelli*, 563 A.2d 973, 976–77 (Pa. Commw. Ct. 1989) (stating that "[t]he fact that more conclusive evidence might be presented at a subsequent hearing is neither sufficient nor relevant grounds for disallowing the application of the doctrine in this Commonwealth").